# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**MICHELLE LEE HELM**, individually and]
as Guardian and next friend of **T.D.H**.,   ]
minor child;                          ]
                               ]
          Plaintiff,             ]
                               ]
v.                                ]
                               ]
**RAINBOW CITY, ALABAMA**, an   ]
Alabama municipal corporation;     ]
**GREG CARROLL**, Chief of        ]
Police, Rainbow City, Alabama; **JAMES**  ]
**FAZAKAS**, individually and in his    ]
capacity as a member of the Rainbow City, ]
Alabama Police Department; **GEORGE**  ]
**MORRIS**, individually, and in his official ]
capacity as a member of the Rainbow City, ]
Alabama Police Department; **JUSTIN**  ]
**GILLIAND**, individually, and in his official]
capacity as a member of the Rainbow City, ]
Alabama Police Department; **CENTER**  ]
**STAGES OF ETOWAH COUNTY, INC.** ]
an Alabama limited liability company;    ]
**FICTITIOUS DEFENDANT A[1]**,     ]
individually, and in his official        ]
capacity as a member of the Rainbow City, ]
Alabama Police Department;         ]
**FICTITIOUS DEFENDANT B**,      ]
a member of the Rainbow City, Alabama  ]
Police Department; **FICTITIOUS**     **]**
**DEFENDANT C**, a member of the Rainbow]
City,  Alabama Police Department; **CITY**  ]

---

[1]The fictitiously named Defendants herein are described with enough specificity so that the actions attributable to those Defendants may be easily assigned once the true identities are learned. *See*, Memorandum Opinion of *Heard v. Amerson* CV 1:12-2581-RBP.

**OF GADSDEN**, **ALABAMA** an Alabama ]
municipal Corporation; **FICTITIOUS** ]
**DEFENDANT D**; a member of the Gadsden]
Alabama Police Department; **FICTITIOUS** ]
**DEFENDANT E**; a member of the Gadsden]
Alabama Police Department; FICTITIOUS ]
DEFENDANT F; a member of the Gadsden ]
Alabama Police Department; ]
                                     ]
                                     ]
           Defendants.               ]

# COMPLAINT

COMES NOW, MICHELLE LEE HELM, individually, and as Guardian and Next Friend of Plaintiff T.D.H, and files the following Complaint:

## JURISDICTION

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331.

## VENUE

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b)(2).

## PARTIES

1.     Plaintiff **Michelle Lee Helm**, ("**Plaintiff Helm**" or "**Plaintiff**") at all times relevant and material was, and is the mother of **T.D.H.**  The Plaintiff is a resident of Rainbow City, Alabama.

2.     **T.D.H.**, at all times relevant and material was, and is the minor child of the Plaintiff.

3.      Defendant **RAINBOW CITY, ALABAMA ("Defendant RBC")**, at all time relevant was and is a municipal corporation and/or political subdivision of the State of Alabama and has among its other function operating and maintaining a law enforcement agency known as the Rainbow City, Alabama Police Department ("RBCPD").

4.      Defendant **Greg Carroll ("Defendant Carroll")**, at all time relevant and material acted as Chief of Police, Rainbow City, Alabama.

5.      Defendant **George Morris ("Defendant Morris")**, at all times relevant and material was employed as a police officer with the Rainbow City, Alabama Police Department.

6.      Defendant **James Fazakas ("Defendant Fazakas")**, at all times relevant and material was employed as a member of the Rainbow City, Alabama Police Department.

7.      Defendant **Justin Gilliand ("Defendant Gilliand")**, at all times relevant and material was employed as a member of the Rainbow City, Alabama Police Department.

8.      **Defendant City of Gadsden, Alabama ("Defendant Gadsden")** at all time relevant was and is a municipal corporation and/or political subdivision of the State of Alabama and has among its other function operating and maintaining a law enforcement agency known as the Gadsden, Alabama Police Department.

9. Defendant **Center Stage of Etowah County ("Center Stage")**, at all times relevant and material was/is an Alabama domestic limited liability company, whose with a principal place of business located in Rainbow City, Alabama.

10. Defendant **FICTITIOUS DEFENDANT A ("FDA")**, whose true identity is unknown at this time was, at all times relevant and material employed by RBC as a police officer. FDA's true identity will be added to this Complaint immediately upon discovery.

11. Defendant **FICTITIOUS DEFENDANT B ("FDB")**, whose true identity is unknown at this time, was at all times relevant and material employed by RBC as a police officer. FDB's true identity will be added to this Complaint immediately upon discovery.

12. Defendant **FICTITIOUS DEFENDANT C ("FDC")**, whose true identity is unknown at this time, was at all times relevant and material employed by RBC as a police officer. FDC's true identity will be added to this Complaint immediately upon discovery

13. Defendant **FICTITIOUS DEFENDANT D ("FDD")**, whose true identity is unknown at this time, was at all times relevant and material employed by Defendant Gadsden as a police officer. FDD's true identity will be added to this Complaint immediately upon discovery

14.     Defendant **FICTITIOUS DEFENDANT E ("FDE")**, whose true identity is unknown at this time, was at all times relevant and material employed by Defendant Gadsden as a police officer.  FDE's true identity will be added to this Complaint immediately upon discovery

15.     Defendant **FICTITIOUS DEFENDANT F ("FDF")**, whose true identity is unknown at this time, was at all times relevant and material employed by Defendant Gadsden as a police officer.  FDF's true identity will be added to this Complaint immediately upon discovery**.**

16.     Herein, when not named or identified individually, Defendant Fazakas, Defendant Gilliland, Defendant Morris, FDA, FDB, FDC, FDD, FDE & FDF are collectively referred to as the "Named Defendants".  Whenever herein Named Defendants appear, it refers to these Defendants collectively.

## FACTUAL ALLEGATIONS

17.     Defendant RBC is under a duty to run its policing activities in a lawful manner so as to protect the peace of Rainbow City, Alabama, and to preserve its residents the rights, privileges, and amenities guaranteed and secured to them by the Constitution and laws of the State of Alabama.

18.     Defendant Gadsden is under a duty to run its policing activities in a lawful manner, and to preserve the rights, privileges, and amenities guaranteed and

secured to United States citizens by the Constitution and laws of the State of Alabama.

19.     At all times relevant, the Named Defendants herein were acting by virtue of and under the color of their offices as law enforcement officers of Defendant RBC and Defendant Gadsden.

20.     Tasers sometimes referred to as stun guns, use compressed gas to fire electrodes delivering an initial shock of 50,000 volts of electricity.

21.     As far back as 2004, the RBCPD has allowed its officers to carry Taser guns for use in their offices as law enforcement officers.

22.     Upon information and belief, as far back as February 2004, the Taser models employed by the RBCPD are the Taser X-26 and the Advanced M26 Taser.

23.     At a July 25, 2005 Defendant RBC Council meeting, Defendant RBC approved travel and tuition cost for Officer Chase Jenkins to attend "The New Taser X26 and Advanced Taser M26" instructor course in Anniston, Alabama, August 17 and 18 at a cost of $80.00 and no lodging. Sergeant LaMont Tucker, Officer David Mitchell and Officer Scott Holderfield were approved to attend the course at Jacksonville University, August 17-18, 2005, at a cost of $50.00 each for two officers, and the third officer attended free.

24.     At the August 12, 2013 RBC Council meeting, the Defendant RBC City Council approved funds for Officer John Bryant to attend a Taser Instructor recertification course in Gadsden, at a cost of $l75.00, September 4-5, 2013.

25.     The Taser X-26 and other Tasers are not meant to force compliance when the person upon whom the Taser is being used does not present a threat to officers or the public.

26.     The Taser is not a toy, and is known to cause death or serious injury.

27.     On April 30, 2012, the American Heart Association published a study conducted by Dr. Douglas P. Zipes entitled "Sudden Cardiac Arrest and Death Associated With Application of Shocks From a Taser Electric-Controlled Device", focusing on the Taser X-26.

28.     Tasers inflict painful and frightening blows that temporarily paralyze the large muscles of the body, rendering the victim helpless.

29.     Tasers overwhelm neurotransmitters, and prevent brain signals that control movement.

30.     There are continuing reports, as in this case, of officers using multiple and/or prolonged shocks with the Tasers despite warnings, some from the manufacturers themselves, that such misuse may increase the risk of adverse effects on the victim.

31.     Tasers should be employed in situations where firearms or other weapons are not an option.

32.     Some law enforcement officers, such as the named and fictitious Defendants in this case, use Tasers to subdue people who do not pose significant threats.

33.     In this case, officers of the RBCPD used Tasers on two unarmed individuals, one of who, T.D.H. was a minor suffering a medical emergency.

34.     Officer employed by Defendant Gadsden failed to stop the unlawful use of the Tasers by Defendant RBC officers on T.D.H.

35.     A Taser was employed on T.D.H. three (3) times while T.D.H. was suffering a medical emergency.

36.     Officers of the RBCPD also used a Taser on Plaintiff Helm who was not a threat, and who was being compliant with all directives issued to her by officer employed by the RBCPD.

37.     The use of a Taser in these kinds of situations is inconsistent with the individuals' constitutional rights, which require police to use force only as a last resort, in proportion to the threat posed.

38.     The RBCPD officers' repeated use of Tasers on Plaintiff Helm and T.D.H.; and the failure to stop the uses by officers of Defendant Gadsden amounted to excessive force, torture, and other cruel, inhuman, and degrading treatment.

39.     There were at least five (5) RBCPD officers present, on January 16 2015 when Tasers were used on Plaintiff Helm and T.D.H.

40. There were at least three (3) Defendant Gadsden police officers present on January 16, 2015 when Tasers were used on Plaintiff Helm and T.D.H.

41. Neither Plaintiff Helm nor T.D.H. were armed nor a threat to the public or police officers when the RBCPD officers used Tasers on them on January 16 2015.

42. In fact, at the time she was tased three separate times, T.D.H. was suffering a medical emergency. At the time Plaintiff Helm was tased, she was in a prone position faced down, with her arms secured behind her back, and Plaintiff Helm was dressed only in pajamas and a t-shirt.

43. The repeated deployment of a stun gun on T.D.H., a child suffering from grand-mal seizures, and not posing a threat to anyone was unconstitutional.

44. The deployment of a stun gun on Plaintiff Helm after she was knocked to the floor and was restrained on her knees with her hands secured behind her back was unconstitutional.

45. At no time prior to or after Tasers were used on Plaintiff Helm and T.D.H. did Plaintiff Helm or T.D.H. ever physically or verbally threaten any police officer or any member of the general public.

46. The Named Defendants, who at the relevant time were members of the RBCPD and the Gadsden Police Department knew, or should have known that repeated, prolonged, and/or continuous exposure to the electrical discharge from the Tasers could cause strong muscle contractions and impair breathing and

respirations, particularly when the probes were placed directly onto T.D.H's chest and diaphragm area.

47. Neither Plaintiff Helm nor T.D.H. had committed any crime prior to having Tasers used on them by the Named Defendants.

48. The situation that unfolded on January 16, 2015 during T.D.H.'s medical emergency was not the "tense, uncertain or rapidly evolving" circumstances calling for "split second decisions" which could have made some use of force necessary.

49. In fact, no use of force was necessary to the persons of Plaintiff Helm and T.D.H. on January 16, 2015 because T.D.H. was suffering from a medical emergency and Plaintiff Helm was attending to her aid clad in pajamas.

50. The Named Defendants, who at all times relevant are/were members of the RBCPD and members of Defendant Gadsden's police department on January 16, 2015 participated in, or engaged in the malicious and sadistic use of Tasers on Plaintiff Helm and T.D.H.

51. As a result of being struck by an alcohol-impaired driver, T.D.H. developed a medical condition, which causes her to suffer Tonic-Clonic seizures ("grand mal seizures").

52. When in the throws of grand-mal seizures, T.D.H. will lose consciousness, her skeletal muscles will tense, and T.D.H. will sometimes exhibit loud vocalization caused by the forceful exhalation of air from her lungs.

53.    On January 16, 2015, while attending classes at Southside High School ("School"), T.D.H. suffered a grand-mal seizure.  Paramedics were summoned to the School and as part of the treatment of T.D.H., the paramedics inserted a intravenous needle into T.D.H's arm in order to provide fluids and/or medication to T.D.H.

54.    After treatment at School by the paramedics, T.D.H. was not taken to a care facility.

55.    At or about 8:00 P.M. on January 16, 2015, T.D.H. accompanied friends to a musical concert that was held in a facility located in Rainbow City, Alabama, that, at the time of the acts giving rise to this lawsuit were operated by Defendant Center Stages.

56.    T.D.H. paid a general admission to the facility operated by Defendant Center Stages and gained admission to the musical concert.

57.    Upon entering the facility operated by Defendant Center Stages, T.D.H. was part of a crowd of patrons who were in attendance at the facility operated by Defendant Center Stages.

58.    At a point after T.D.H. entered the facility, the artist performing on stage at the facility operated by Defendant Center Stages exited the stage and entered into the crowd of patrons who were in attendance at the musical concert.

59.     After the artist performing at the facility operated by the Defendant Center Stages exited the stage and entered the crowd of patrons, a stampede ensued that caused T.D.H. to be knocked to the floor of the facility operated by the Defendant Center Stages.

60.     After T.D.H. was knocked to the floor of the facility operated by the Defendant Center Stages, other patrons in the crowd trampled T.D.H.

61.     The stress and fear of being trampled by other crowd patrons caused the onset of a grand-mal seizure in T.D.H.

62.     Once T.D.H. began having the grand-mal seizure while on the floor of the facility operated by Defendant Center Stages, the other patrons parted from around T.D.H. and she was left to seize on the floor of the facility operated by Defendant Center Stages.

63.     D.S.H., T.D.H.'s minor sister informed the Named Defendants, employees of Defendant Center Stage and others that T.D.H. has a medical condition that causes seizures and that she was presently suffering from the effects of that medical condition.

64.     Upon information and belief, an employee of Defendant Center Stages picked T.D.H. up from the floor of the facility operated by Defendant Center Stages and carried her over his shoulder to the lobby of the facility operated by the Defendant Center Stages.

65.    Rather than seeking medical help for T.D.H., the Defendant Center Stages employee unceremoniously dumped T.D.H. onto the floor of Defendant Center Stages' lobby.

66.    After being deposited onto the floor of the lobby of the facility operated by the Defendant Center Stages, Defendant Fazakas, Defendant Morris, FDA, FDB;, FDC, FDD, FDE, FDF, and Defendant Gilliand encountered T.D.H.

67.    T.D.H next suffered a second gran-mal seizure.  D.S.H, T.D.H's sister followed Defendant Center Stages employee into the lobby of the facility operated by Defendant Center Stages and again informed the Named Defendants that T.D.H. was suffering from a medical condition and implored the Defendants to render assistance and call for medical help.

68.    At or about the time that T.D.H. suffered the second grand-mal seizure, Plaintiff Helm arrived to the lobby of the facility in pajamas having been alerted by D.S.H. that T.D.H. was in medical distress.

69.    Upon her arrival to the lobby of the facility operate by Defendant Center Stages, Plaintiff Helm attempted to go to the aid of T.D.H, who by that time was being held down on the ground at five different points of her body by the Named Defendants.  In addition, at that point Defendant Center Stages' employee had T.D.H. in a chokehold around her neck.

70.     Defendant Farakas, who upon information and belief, stands over six feet tall, and at that time weighed over 200 pounds then, "body checked" Plaintiff Helm, who stands just over 5 feet four inches tall and, at that time weighed under 120 pounds, onto the floor of the lobby of the facility operated by the Defendant Center Stages.

71.     Plaintiff Helm was knocked unto her knees by the force of the blow administered to her by Defendant Farakas.

72.     Defendant Farakas then placed Plaintiff Helm into a restrained position by placing both of her arms behind her back and employing a restraint tactic that renders the wrists, hands and fingers immobile.

73.     While Plaintiff Helm was on her knees, and restrained by Defendant Farakas, Defendant Farakas instructed FDA, through the use of the words "get her" to employ the use of a Taser on Plaintiff Helm.

74.     Although initially hesitating to employ the Taser on the restrained Plaintiff Helm, after a second instruction from Defendant Farakas through the use of the words "do it" Defendant FDA employed the Taser into the back of Plaintiff Helm while she was being restrained by Defendant Farakas.

75.     When Plaintiff Helm was "tased" by Defendant Farakas while on her knees and restrained by Defendant Farakas, Plaintiff Helm's bladder evacuated and

caused Plaintiff Helm to urinate a copious amount of urine onto herself, and the floor of the facility operated by the Defendant Center Stages.

76.     This caused, in addition to pain and suffering, devastating embarrassment and mental anguish to Plaintiff Helm.

77.     As Plaintiff Helm was being tased by Defendant Farakas, T.D.H. was coming out of her second grand-mal seizure.  Glimpsing and hearing her mother being tased, T.D.H. attempted to raise her head.

78.     When T.D.H., while restrained by the Defendants and Defendant Center Stages' employee attempted to raise her head and check on the condition of Plaintiff Helm, Defendant Morris employed the Taser on T.D.H in the sternum area of her body.

79.     T.D.H. was tased a second time in the sternum area by Defendant Morris while T.D.H. was still being restrained by the Named Defendants and Defendant Center Stages' employee.

80.     Upon being tased for the third time by Defendant Morris, T.D.H. suffered a third grand-mal seizure and was rendered unconscious.

81.     T.D.H. awoke from the third grand-mal seizure in an ambulance operated by Defendant A Med.

82.     The gauze placed in her mouth by Defendant Center Stages' employee had been replaced by medical tape affixed over her mouth and a surgical mask has been placed over that medical tape.

83.     Because the grand-mal seizures causes T.D.H. to excrete more than normal saliva, the presence of the surgical tape and mask caused T.D.H. to experience the sensation of drowning.

84.     Plaintiff Helm, after being unconstitutional tased and falsely imprisoned by being handcuffed and placed into a RBCPD police vehicle, was transported to the Etowah County Detention Center, and cited for disorderly conduct.

85.     Unwilling to acknowledge the unconstitutional use of force on Plaintiff Helm, the Named Defendants then caused to be filed against Plaintiff Helm charges for disorderly conduct.

86.     The charges filed against Plaintiff Helm were false, and made against her in an attempt by the Named Defendants to cover up their unconstitutional actions.

87.     During Plaintiff Helm's unlawful detainment, she was not allowed to check on the welfare of T.D.H. and was instead ridiculed and threatened that she was ultimately lose custody of her children.

88.     On January 16, 2015, after T.D.H. had been tased three times, bound and gagged, she was transported transported to Gadsden Regional Hospital (the "hospital").

89.     T.D.H. was left restrained and gaged in the common area of the hospital while RBC police officers and Defendant Gadsden police officers made jokes about her, and to her, about Plaintiff Helm's arrest, and threatened to have T.D.H. committed to a mental facility.

90.     The Named Defendants simply abandoned T.D.H. at the hospital, where she was seen and treated for the grand-mal seizures.

91.     T.D.H. was ultimately released by the hospital to a complete stranger.

92.     T.D.H. suffers from recurrent nightmares and panic attacks as a result of her treatment at the hands of the Named Defendants and Defendant Center Stages' employee.

93.     The conduct of the Named Defendants was unjustified, unprovoked, and grossly disproportionate and amounted to the use of excessive force in violation of Plaintiff Helm and T.D.H.'s clearly established Fourth Amendment rights.

94.     Therefore, all Named Defendants are jointly and severally liable for the excessive force used against Plaintiff Helm and T.D.H. on January 16, 2015.

95.     The actions of the Named Defendants against Plaintiff Helm and T.D.H. were unjustified, unprovoked, and objectively unreasonable and constitute a violation of their rights under the Fourth Amendment and/or the Fourteenth Amendment to be free from the use of excessive force.

96.    Further, some or all of the Named Defendants violated Plaintiff Helm and T.D.H.'s constitutional rights by failing to intervene; and stop the repeated use of the Taser on T.D.H.; and preventing Plaintiff Helm from stopping the vicious, repeated attack by Taser on her minor daughter T.D.H. who, at the same time she was being tased, was having a medical emergency.

97.    The unconstitutional actions of the Named Defendants became known to, among others Defendant Carroll, Defendant Gadsden, and Defendant RBC, who failed to adequately investigate this matter and their customs and practices despite being made aware that the Named Defendants violated the constitutional rights of Plaintiff Helm and T.D.H.

98.    Therefore, Defendant Carroll, Defendant Gadsden, and Defendant RBC approved, ratified, and knowingly acquiesced in the conduct of all of the Named Defendants in all respects.

99.    The Named Defendants, Defendant Carroll, Defendant Gadsden, and Defendant RBC, individually, and in concert with each other acted under the color of law in their official capacities, to deprive Plaintiff Helm and T.D.H. of their rights and freedom from unreasonable seizure and the use of unnecessary, unjustified excessive force; said rights secured to Plaintiff Helm and to T.D.H. by the Fourth, Eighth, and Fifteenth Amendments to the Constitution of the United States; and by 42 U.S.C. §§ 1983 and 1988.

100. The use of force by the Named Defendants was excessive and not objectively reasonable in light of the facts and circumstances confronting them.

101. On an objective basis, no reasonable competent officer would have concluded that the Named Defendants should have taken the disputed actions.

102. Plaintiff Helm and T.D.H. were injured as a direct and proximate result of the acts of the Named Defendants, Defendant Carroll, Defendant RBC, and Defendant Gadsden.

103. The injuries, damages, and relief which Plaintiff Helm and T.D.H. seek relief from Defendant Carroll, Defendant RBC, Defendant Gadsden, and the Named Defendants, jointly and severally, under both state and federal law, include but are not limited to:

    a.   Damages for physical pain and suffering of past, present and future:

    b.   Damages for emotional distress of past, present and future;

    c.   Damages for medical expenses of past, present and future;

    d.   Damages for loss of enjoyment of life past, present and future;

    e.   Damages for permanent scars and disfigurement caused by Taser prongs;

    f.   Punitive damages;

    g.   Pre and post judgment interest;

h.   Attorney's fees;

i.   Cost associated with bringing and maintaining this action;

j.   A Declaratory Judgment that the acts and conduct of Defendant Carroll, Defendant RBC, Defendant Gadsden, and the Named Defendants complained of herein are unconstitutional;

k.   Injunctive relief precluding the Named Defendants from engaging in the conduct herein and the future and requiring Rainbow City, Alabama Gadsden, Alabama, the Gadsden Alabama Police Department, and the RBCPD to provide proper policy, training and supervision of its officers and holding them accountable for misconduct; and

l.   All such relief, general and specific, to which they may be entitled.

104.   Defendant Center Stages regularly promotes, and host music acts at its facility located in Rainbow City, Alabama.

105.   Defendant Center Stages hosts musical acts from various genres including Country/Western, Rock, Hard Rock, and Hip-Hop ("rap").

106.   On January 16, 2015, Defendant Center Stages hosted in its facility a hip-hop artist who performs under the stage name Kevin Gates ("Gates").

107.   In October of 2014, a Gates concert in North Dakota was abruptly stopped when a gunman with an assault rifle at the concert caused what Sioux City police described as a "near riot".

108.   On January 7, 2015, it was reported that at a concert, a concertgoer in the crowd punched Gates in the mouth after Gates, while on stage attempted to kiss the girlfriend of the punch-thrower.

109.   On September 4, 2014, it was reported that at a Gates concert in Tennessee, Gates entered the crowd and punched a concertgoer, causing a melee in the crown of concertgoers.

110.   In January of 2015, Gates jumped into a crowd of concertgoers in Kentucky, setting off a melee that ended with one concertgoer firing a weapon into the crowd.

111.   The Internet is replete with video clips showing Gates, prior to January 16, 2015, leaving the stage at his concerts, and entering the crowds of concertgoers, with the predictable results of melees and worse.

### CAUSE OF ACTION I
### Violation of Fourth, Eighth, And Fourteenth Amendments (Plaintiff Helm Against The Named Defendants; Defendant Carroll; Defendant Gadsden and Defendant RBC)

112.   Plaintiff Helm in addition to the preceding allegations, further alleges:

113.   In committing the acts complained of herein, the Named Defendants, Defendant Carroll, Defendant Gadsden and Defendant RBC acted jointly and under color of state law to deprive Plaintiff Helm of her clearly established

constitutionally protected rights under the Fourth and Fourteenth Amendments of the United States Constitution, including but not limited to:

    a.    Freedom from unreasonable seizure;

    b.    The right to be free from unreasonable searches

    c.    Freedom from the use of unreasonable, unjustified and excessive force;

    d.    Freedom from deprivation of liberty and property without due process of law;

    e.    Freedom from summary punishment;

    f.    Freedom from the prevention of officers from using excessive force;

    g.    Freedom from arbitrary governmental activity which shocks the conscience of a civilized society; and

    h.    Freedom from cruel and unusual punishment.

114. In violating Plaintiff Helm's rights as set forth above, the Named Defendants, Defendant Carroll, Defendant Gadsden and Defendant RBC acted under the color of state law and conducted an unreasonable seizure of Plaintiff Helm and utilized unnecessary, unjustified, unreasonable and excessive force.

115. The actions of the Named Defendants were not reasonable under the circumstances based on the perspective of a reasonable officer at the scene.

116.   Further, the acts committed by the Named Defendants against Plaintiff Helm occurred in the presence of each other and the Named Defendants further violated Plaintiff Helms's constitutional rights by failing to intervene and prevent the violation of Plaintiff Helm's constitutional rights by fellow officers.

117.   The Named Defendant acted with deliberate indifference.

118.   The Named Defendants, Defendant Carroll, Defendant Gadsden, and Defendant RBC knowingly and deliberately conspired to deprive Plaintiff Helm of her civil rights.

119.   As a direct and proximate result of the violations of her constitutional rights by the Named Defendants, Defendant Carroll Defendant Gadsden, and Defendant RBC, Plaintiff Helm has suffered general and special damages as alleged in this complaint and entitled to relief.

## CAUSE OF ACTION II
### Violation of Fourth, And Fourteenth Amendments (T.D.H. Against The Named Defendants; Defendant Carroll; Defendant Gadsden and Defendant RBC)

120.   In addition to the preceding allegations, the Plaintiff further alleges:

121.   In committing the acts complained of herein, the Named Defendants, Defendant Carroll, Defendant Gadsden and Defendant RBC acted jointly and under color of state law to deprive T.D.H of her clearly established constitutionally protected rights under the Fourth and Fourteenth Amendments of the United States Constitution, including but not limited to:

a. Freedom from unreasonable seizure;

b. The right to be free from unreasonable searches

c. Freedom fro the use of unreasonable, unjustified and excessive force;

d. Freedom from deprivation of liberty and property without due process of law;

e. Freedom from summary punishment;

f. Freedom from cruel and unusual punishment;

g. Freedom from the prevention of officers from using excessive force; and

h. Freedom from arbitrary governmental activity which shocks the conscience of a civilized society.

122. In violating T.D.H.'s rights as set forth above, the Named Defendants, Defendant Carroll, Defendant Gadsden and Defendant RBC acted under the color of state law and conducted an unreasonable seizure of T.D.H. and utilized unnecessary, unjustified, unreasonable and excessive force.

123. The actions of the Named Defendants were not reasonable under the circumstances, based on the perspective of a reasonable officer at the scene.

124. Further, the acts committed by the Named Defendants against T.D.H. occurred in the presence of each other and the Named Defendants further violated

T.D.H.'s constitutional rights by failing to intervene and prevent the violation of T.D.H.'s constitutional rights by fellow officers.

125.   The Named Defendants, Defendant Gadsden, Defendant Carroll and Defendant RBC knowingly and deliberately conspired to deprive T.D.H. of her civil rights.

126.   As a direct and proximate result of the violations of her constitutional rights by the Named Defendants, Defendant Carroll Defendant Gadsden and Defendant RBC, T.D.H. has suffered general and special damages as alleged in this complaint and is entitled to relief.

### CAUSE OF ACTION III
### (Cruel And Unusual Punishment – Eighth Amendment (Plaintiff Helm and T.D.H. Against Defendant RBC; Defendant Gadsden and Named Defendants;)

127.   In addition to the preceding allegations, the Plaintiff further alleges:

128.   Pursuant to the Eighth Amendment of the United States Constitution, on January 16, 2015 Plaintiff Helm and T.D.H. were entitled to be free from cruel and unusual punishment.

129.   The actions as laid out in the Factual Allegations above committed by the Named Defendants on January 16, 2015 against Plaintiff Helm, and against T.D.H. constituted unnecessary and wanton infliction of pain, suffering mental anguish and emotional distress and were extreme and excessively cruel and in violation of the Eighth Amendment.

130.    The Named Defendants acted maliciously by undertaking, without just cause for reason, courses of action intended to cause Plaintiff Helm and T.D.H. extreme pain, suffering, emotional distress and mental anguish.

**CAUSE OF ACTION VI**
**Failure to Supervise (Plaintiff Helm & T.D.H. Against Defendant Carroll, the Named Defendants, Defendant Gadsden, and Defendant RBC**

131.    In addition to the preceding allegations, the Plaintiff further alleges:

132.    Defendant Carroll and Defendant RBC are under a constitutional duty to ensure that all the police officers in the RBCPD, including the Named Defendants, acted in a manner so as to preserve the constitutional rights of residents and visitors of Rainbow City, Alabama.

133.    Defendant Gadsden is under a constitutional duty to ensure that all the police officers in the Gadsden, Alabama Police Department, including the Named Defendants, acted in a manner so as to preserve the constitutional rights of people with whom the officer come into contact.

134.    Defendant RBC and Defendant Carroll are under a duty to properly train, supervise, and discipline members of the RBCPD and to ensure that employees of the RBCPD, including the Named Defendants operate in a lawful manner, preserving the residents of Rainbow City, Alabama the rights, privileges, and amenities guaranteed them by the Constitution of the United States and the State of Alabama.

135.  Defendant Gadsden is under a duty to properly train, supervise, and discipline members of the Gadsden, Alabama Police Department and to ensure that employees of the Gadsden, Alabama Police Department, including the Named Defendants operate in a lawful manner, preserving the rights, privileges, and amenities guaranteed United States citizens by the Constitution of the United States and the State of Alabama.

136.  Defendant Carroll and Defendant RBC failed in their constitutional duty by permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice or custom of its police officers including the Named Defendants violating the constitutional rights of the public at large, including Plaintiff Helm's and T.D.H.'s.

137.  Defendant Gadsden failed in it's constitutional duty by permitting, encouraging, tolerating, and knowingly acquiescing to an official pattern, practice or custom of its police officers including the Named Defendants violating the constitutional rights of the public at large, including Plaintiff Helm's and T.D.H.'s.

138.  The actions of the Named Defendants complained of herein were unjustified, unreasonable, unnecessary, unconstitutional, excessive, and constitutes an unreasonable seizure effectuated through the use of excessive force and unreasonable force and the deprivation of Plaintiff Helm's and T.D.H.'s due

process protections in violation of the rights secured by the Fourth and Fifteenth Amendments of the Constitution of the United States.

139. Each of the Named Defendants had and has a duty to supervise and prevent the other officers at the scene from violating Plaintiff Helm and T.D.H.'s constitutional rights.

140. Defendant Gadsden, Defendant Carroll and Defendant RBC are directly liable for the violations of Plaintiff Helm's and T.D.H.'s constitutional rights due to the following policies, practices, or customs which were in effect on January 16, 2015, and which were the moving force behind the violations of Plaintiff Helm's and T.D.H.'s constitutional rights:

> a. Defendant Gadsden, Defendant Carroll and Defendant RBC failed to adequately and properly train and educate their officers with respect to procedures to employ when interacting with citizens, including stops, seizures, detentions, and arrests, the proper use of force, the methods of using Tasers, creating an atmosphere where illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference and reckless disregard to the welfare of the public at large, including Plaintiff Helm and T.D.H.

b.     Defendant Gadsden, Defendant Carroll and Defendant RBC failed to properly supervise, train and discipline officers of the RBCPD and the Gadsden Police Department with respect to the violations of the Constitution of the Untied States, the Constitution of Alabama, and their own polices regarding the use of force, the sue of Tasers, creating a pattern, policy, practice, custom or atmosphere where such illegal and unconstitutional behavior is tolerated and accepted in deliberate indifference to the welfare of the public at large, including Plaintiff Helm and T.D.H.

c.     Defendant Gadsden, Defendant Carroll and Defendant RBC failed to adequately monitor and evaluate the performance of their officers and their compliance with the laws and policies, practices, and customs with respect to the use of force, and use of Tasers, with deliberate indifference and reckless disregard to the public at large, including Plaintiff Helm and T.D.H.

d.     Defendant Gadsden, the Gadsden Police Department, Defendant Carroll and Defendant RBC and the RBCPD have a practice, policy, or custom of exonerating officers regarding complaints of misconduct including but not limited to the use of

force, and use of Tasers, creating an atmosphere where illegal and unconstitutional behavior is condoned, tolerated or approved in deliberate indifference and reckless disregard to the rights of the public at large, including Plaintiff Helm and T.D.H.

e.     The RBCPD has a policy, practice or custom of allowing its officers to use excessive and/or unreasonable force without fear of discipline creating an atmosphere where such behavior is accepted, approved, and ratified, in reckless disregard and deliberate indifference to the welfare of the public at large, including Plaintiff Helm and T.D.H.

141.   Accordingly, Defendant Gadsden, Defendant Carroll and Defendant RBC ratified, condoned and approved the Named Defendants' conduct in all aspects of the deprivation of the constitutional rights afforded to Plaintiff Helm and T.D.H.

142.   As a direct a proximate result of the forgoing policies, practices, and customs of the RBCPD and the Gadsden Police Department; Defendant Gadsden, Defendant Carroll and Defendant RBC are responsible for the violations of the constitutional rights by the Named Defendants which were substantially certain to occur and were the moving force behind the violations of Plaintiff Helm's and T.D.H. constitutional rights.

## CAUSE OF ACTION VII
## Premise Liability (Against Defendant Center Stages)

143. In addition to the preceding allegations, the Plaintiff further alleges:

144. Defendant Center Stages knew or should have known, and it should have been reasonably anticipated by Defendant Center Stages that the patrons at the Gates rap concert hosted on January 16, 2015 being hosted by Center Stages required enhanced crowd control measures.

145. T.D.H. was an invitee of Defendant Center Stages on January 16, 2015.

146. Defendant Center Stages knew or should have known that in the absence of appropriate supervision and crowd control, it was reasonably foreseeable that disorder, or even a riot could occur as a result of the vagaries of myriad individuals jammed together in a heightened atmosphere at the Gates rap concert hosted by Defendant Center Stages.

147. Defendant Center Stages, by hosting the rap concert, and allowing invitees, including the Plaintiff T.D.H. to pay for entry into its facilities was negligent both in failing to provide reasonable security to prevent the stampede that caused injury to Plaintiff T.D.H., and in failing to control the stampede once it began.

148. The negligence of Defendant Center Stages in failing to control the crowd during the rap concert on January 16, 2015 caused Plaintiff T.D.H. to be trampled by the crowd assembled inside the facility operated by Defendant Center Stages,

triggering the onset of Plaintiff T.D.H.'s grand-mal seizures that lead to the deprivation of her constitutional rights by the Named Defendants.

149. The negligence of Defendant Center Stages was willful and wanton in nature.

WHEREFORE, PREMISES CONSIDERED, Plaintiff Helm demands judgment, on behalf of herself and on behalf on T.D.H., both compensatory and punitive, against each named Defendant in amounts to be determined by a struck jury.

## JURY DEMAND

The Plaintiff demands trial by struck jury pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

*/s/ H. Gregory Harp*
H. Gregory Harp (asb-0904-t75h)
HARP LAW, LLC
Post Office Box 367
Birmingham, Alabama 35201
(205) 567-6469 (Phone)
gharp@harplawllc.com