IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MICHELLE LEE HELM,** *individually and as Guardian and next friend of* **T.D.H.**, *minor child*, <br><br> Plaintiff, <br><br> v. <br><br> **RAINBOW CITY, ALABAMA,** *et al.* <br><br> Defendants. | Case No.: 4:15-CV-1152-VEH |

**MEMORANDUM OPINION AND ORDER
DENYING JUDGMENT BY DEFAULT**

The above-entitled civil action is before the Court on the Plaintiff's Second Motion for Default Judgment against Defendant Center Stage of Etowah County, LLC ("Center Stage"). (Doc. 50).

**INTRODUCTION**

The Court makes the following findings of fact from the allegations in the Plaintiff's Amended Complaint and the attachments thereto:

1. Defendant Center Stage regularly promotes and hosts music acts at its facility located in Rainbow City, Alabama.

2. On January 16, 2015, Defendant Center Stage hosted a "hiphop" artist who performs under the stage name Kevin Gates ("Gates").

3. In October of 2014, a Gates concert in North Dakota was abruptly stopped when a gunman with an assault rifle at the concert caused what Sioux City police described as a "near riot."

4. In January of 2015, Gates jumped into a crowd of concert-goers in Kentucky, setting off a melee that ended with one concert-goer firing a weapon into the crowd.

5. The internet is replete with video clips showing Gates, prior to January 16, 2015, leaving the stage at his concerts, and entering the crowds of concert-goers, which resulted in "melees."[1]

---

[1] This original fact, as set out in the Complaint, ended with the phrase: "with the predictable results of melees and worse." (Doc. 26 at 23, ¶111). The phrase "and worse" is vague and will not be deemed to be an admitted allegation. The Amended Complaint also alleges:

> 108.   On January 7, 2015, it was reported that at a concert, a concert[-]goer in the crowd punched Gates in the mouth after Gates, while on stage attempted to kiss the girlfriend of the punch-thrower.
>
> 109.   On September 4, 2014, it was reported that at a Gates concert in Tennessee, Gates entered the crowd and punched a concertgoer, causing a melee in the crown of concert[-]goers.

(Doc. 26 at 22, ¶¶ 108-109). These "facts" do not state to whom, or from whom, these "reports" were made. The court will not deem these vague, unattributed allegations of "reports" as "facts" which are deemed to be admitted as a result of the Defendant's default.

6. T.D.H. has a medical condition which causes her to suffer grand-mal seizures.

7. When in the throws of grand-mal seizures, T.D.H. will lose consciousness, her skeletal muscles will tense, and T.D.H. will sometimes exhibit loud vocalization caused by the forceful exhalation of air from her lungs.

8. On January 16, 2015, while at school, T.D.H. suffered a grand-mal seizure. Paramedics were summoned to the school and, as part of the treatment of T.D.H., the paramedics inserted an intravenous needle into T.D.H's arm in order to provide fluids and/or medication to T.D.H. After treatment by the paramedics, T.D.H. was not taken to a care facility.

9. At or about 8:00 P.M. on January 16, 2015, T.D.H. accompanied friends to the aforementioned Gates concert.

10. T.D.H. paid a general admission to the facility operated by Defendant Center Stage and gained admission to the concert.

11. Upon entering the facility, T.D.H. was part of a crowd of other patrons who were in attendance.

12. At a point after T.D.H. entered the facility, Gates exited the stage and entered into the crowd.

13. Thereafter, a stampede ensued that caused T.D.H. to be knocked to the floor and trampled by other patrons.

14. The stress and fear of being trampled by other crowd patrons caused the onset of a grand-mal seizure in T.D.H.

15. Once T.D.H. began having the grand-mal seizure, the other patrons parted from around T.D.H. She was left to seize on the floor.

16. Helm alleges that, thereafter, she and T.D.H. were subjected to an unconstitutional use of force by officers of the Rainbow City, Alabama Police Department.

## THE INSTANT ACTION

Helm, individually and as guardian and next friend of T.D.H., filed this action on July 9, 2015. (Doc. 1).[2] Center Stage was named a defendant in the initial complaint. On September 10, 2015, an Amended Complaint was filed. (Doc. 26). In the Amended Complaint it was alleged that Center Stage was liable to T.D.H. for injuries sustained by T.D.H. at a facility owned and operated by Center Stage.

Helm served the Summons and Complaint on Center Stage's registered agent on September 22, 2015. (Doc. 30). On October 15, 2015, the Court noted that Helm perfected service on Center Stage and that no answer had been filed by Center Stage.

---

[2] In the remainder of this opinion, the Court will merely use "Helm" to refer to Helm in both of her capacities.

Helm was directed to show cause why the action against Center Stage should not be dismissed for want of prosecution. (Doc. 39). On October 15, 2015, Helm filed a Motion for Entry of Default against Center Stage. (Doc. 40).[3] The Clerk of Court entered Center Stage's default on October 15, 2015. (Doc. 41). The record notes that the Entry of Default was mailed to Center Stage that same day.

On October 15, 2015, Helm filed a Motion for Default Judgment against Center Stage (Doc. 42). On October 20 2015 the Clerk of Court filed a notice of returned, unclaimed, certified mail addressed to Center Stage c/o Michelle Garbe at 209 Rescia Avenue, Rainbow City, Alabama. (Doc. 43).[4] On March 30, 2016, Helm filed a renewed motion seeking a Default Judgment. (Doc. 50).

On April 6, 2016, the Court directed Center Stage to show cause why the motion should not be granted. (Doc. 52). The Court directed the Clerk of Court to mail that order to Center Stage, via certified mail. (Doc. 52-1 at 1-2). The Clerk of Court apparently sent the order via certified mail <u>and</u> regular mail, both of which were returned as "undeliverable." (Docs. 53, 54). Thereafter, on April 22, 2016, the court, *sua sponte*, reviewed the Alabama Secretary of State's website for the proper name and address of the registered agent for Center Stage of Etowah County, LLC

---

[3] The motion was entitled "Motion for Clerk's Entry of Default <u>Judgment</u>." (Doc. 40 at 1) (emphasis added). However, in the body of the motion, an <u>entry</u> of default was requested.

[4] It is unknown whether the returned mailing is the Entry of Default.

("Center Stage"). After said review, the Court took judicial notice that the registered agent for Center Stage is Michele Garbe, who would be properly served at the registered office of Center Stage: <u>209</u> Rescia Avenue, Rainbow City, Alabama 35906. This Court, in its previous order, had instructed the clerk to send the order to <u>206</u> Rescia Avenue. (Doc. 52). The Court instructed the Clerk of Court to resend the April 6, 2016, show cause order to the correct address via regular mail and certified mail. That was done, and both were returned as undeliverable. (Docs. 56, 57).

No opposition to the Motion for Default Judgment has been filed by any party.

## ANALYSIS

Rule 55, FED.R.CIV.P., provides in pertinent part:

(a) **Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b) **Entering a Default Judgment.**

\* \* \* \* \*

(2) **By the Court.** In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The

> court may conduct hearings or make referrals — preserving any federal statutory right to a jury trial — when, to enter or effectuate judgment, it needs to:
>
> > (A) conduct an accounting;
> > (B) determine the amount of damages;
> > (C) establish the truth of any allegation by evidence; or
> > (D) investigate any other matter.

FED.R.CIV.P. 55.

Because default has been entered against Center Stage, the allegations of the Amended Complaint are taken as true and Center Stage's liability is established. *See, e.g., AutoTec, L.L.C. v. Auction Access Auto, Inc.*, 2:12-cv-00896-RDP, 2012 WL 2357951, at *2 (N.D.Ala. June 18, 2012) ("Upon default, the well-pleaded allegations of a complaint are taken as true. Because Defendants have previously been declared in default . . . their liability is established.") (internal citations omitted); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998) ("If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

The court's analysis of the Motion for Default Judgment involves a two-step process. First, the court must satisfy itself that it has jurisdiction over the parties and the subject matter of the lawsuit. *See Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th

Cir. 1994) (holding that district courts "always have an obligation to examine *sua sponte* their jurisdiction before reaching the merits of any claim"). Second, the Court must ensure that Helm has satisfied the elements of Rule 55, FED.R.CIV.P., and is entitled to the default judgment it seeks. *See Nishimatsu Constr. Co v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[5] (explaining that "a defendant's default does not in itself warrant the court entering a default judgment" and that "[t]here must be a sufficient basis in the pleadings for the judgment entered").

### Jurisdiction[6]

#### *Personal Jurisdiction*

It is an elementary requirement that personal jurisdiction must be established in every case before a court has power to render any judgment. *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). A court obtains personal jurisdiction over the parties when the complaint and summons are properly served upon the defendant. *Royal Lace Paper Works v. Pest-Guard Prods.*, 240 F.2d 814, 816 (5th Cir. 1957).

---

[5] All decisions of the former Fifth Circuit handed down prior to September 30, 1981, constitute binding precedent on this Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[6] Helm has made no showing as to the Court's jurisdiction.

The record establishes that defendant Center Stage was served with a copy of the Summons and Complaint, on September 22, 2015, through personal service on its registered agent, Michele Garbe. (Doc. 30 at 2). Accordingly, the court finds that it has personal jurisdiction over the parties.

### *Subject Matter Jurisdiction*

In this case, the Complaint alleges jurisdiction pursuant to 28 U.S.C. § 1331 (doc. 26 at 2), which provides that subject matter jurisdiction exists if the suit "aris[es] under the Constitution, laws, or treaties of the United States." Against Center Stage, the Amended Complaint alleges only "premises liability," a claim which is actually an Alabama state law claim of "negligence."  (Doc. 26 at 56). The Motion for Default Judgment makes no attempt to explain how this Court has jurisdiction over that claim. For that reason alone, the motion is due to be denied.[7]

---

[7] The Court recognizes that it very likely has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367.  However, "[t]he party who seeks to invoke a federal district court's jurisdiction bears the burden of establishing the court's authority to hear the case." *Pate v. Chilton Cty. Bd. of Educ.*, 853 F. Supp. 2d 1117, 1128 (M.D. Ala. 2012) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 391, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987)). Further, in light of the Court's findings that the movant has failed to establish entitlement to a Default Judgment, and its ultimate denial of the instant motion <u>without</u> prejudice, the Court will not do Helm's work for her.

**Helm Has Not Shown that She Is Entitled to a Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) allows the court to enter a default judgment when the Clerk has entered default and the party seeking judgment has applied to the court for a default judgment. To determine whether the moving party is actually entitled to a default judgment, the court must review the sufficiency of the complaint and its underlying merits. *See Stegeman v. Georgia*, 290 Fed. App'x 320, 323 (11th Cir. 2008) (citing *Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The law is well-settled that "a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact." *Tyco Fire & Sec.*, 218 Fed. App'x at 863. However, the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2007). In this case, the Court finds that Helm has not established that she is entitled to a default judgment against Center Stage.

Helm is unclear as to the exact duty which was breached in this case, and how it was breached. At one point in her motion, Helm states that Center Stage "did not . . . warn those purchasing tickets to the Gates show that Gates has a history of violence and injuries that accompany his act." (Doc. 50 at 3). However, and importantly, the Amended Complaint does not state that Center Stage failed to warn T.D.H. Instead, the Amended Complaint alleges:

>280. Defendant Center Stage[], by hosting the rap concert, and allowing invitees, including the Plaintiff T.D.H. to pay for entry into its facilities was negligent both <u>in failing to provide reasonable security to prevent the stampede that caused injury to Plaintiff T.D.H., and in failing to control the stampede once it began</u>.

(Doc. 26 at 56-57) (emphasis added). The motion also argues that the invitation itself was a breach of some duty. (Doc. 50 at 4 ("Despite the known[8] danger that accompanies performances by Gates, Center Stage invited T.D.H. and other patrons onto the premises in exchange for the price of a purchased ticket of admission.").

Whatever the duty and breach in this case, Helm does not analyze, in the context of relevant Alabama authority, how anything Center Stage did (or failed to do) was negligence. Her entire argument is as follows:

---

[8] There is actually no allegation in the "facts" of the Amended Complaint that Center Stage "knew" anything. In Count XVII, the Amended Complaint states:

>277. Defendant Center Stage[] <u>knew or should have known</u>, and it <u>should have been reasonably anticipated</u> by Defendant Center Stage[] that the patrons at the Gates rap concert hosted on January 16, 2015 being hosted by Center Stage[] required enhanced crowd control measures.
>
>. . .
>
>279. Defendant Center Stage[] <u>knew or should have known</u> that in the absence of appropriate supervision and crowd control, it was reasonably foreseeable that disorder, or even a riot could occur as a result of the vagaries of myriad individuals jammed together in a heightened atmosphere at the Gates rap concert hosted by Defendant Center Stage[].

(Doc. 26 at 56) (emphasis added). These are legal conclusions, not facts.

> "In a premises-liability case, the elements of negligence are the same as those in any tort litigation: duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Ex parte Harold L. Martin Distrib. Co.*, 769 So.2d 313, 314 (Ala. 2000). As such, Center Stage owed T.D.H. and other paying patrons a duty of care. In Alabama, one who is invited onto the premises of another for commercial purposes is an invitee. *See Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So. 2d 158, 161 (Ala. 1997). T.D.H. was an invitee of Center Stage on the night of January 16, 2015. The duty owed by the inviter to an invitee is to exercise ordinary and reasonable care to keep the premises in a reasonably safe condition. *Winn-Dixie v. Godwin*, 349 So. 2d 37 (Ala. 1977).
>
> The facts alleged in the Complaint are sufficient to show that Center Stage breached the duty of care owed to the Plaintiff and T.D.H. by having Gates perform with actual or reasonable notice that Gates invited the very sort of danger that befell the T.D.H. The dangers that awaited T.D.H. when she entered Center Stage's premises on January 16, 2015 were neither open nor obvious to T.D.H. In stark contrast, Center Stage knew or had reason to know "that acts are occurring or [are] about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises." *Latham v. Aronov Realty Co.*, 435 So. 2d 209, 213 (Ala.1983).

(Doc. 50 at 4-5). This vague argument generally alleges that Center Stage owed T.D.H. a "duty of care," that it was required to keep the premises in a "reasonably safe condition," and that it is liable because it knew that "acts" would occur on the premises and should have protected against such acts. However, in this argument, Helm does not discuss any of the possible duties she has proposed, or explain exactly

what Center Stage[] should have done.[9]

Under these circumstances, the motion is due to be **DENIED**.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the Second Motion for Default Judgment is **DENIED without prejudice**.

**DONE** and **ORDERED** this 26th day of May, 2016.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

---

[9] Further, Helm makes no attempt to explain how Center Stage could be responsible for the alleged use of excessive force by the police officers.